**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ROGER L. HARRIS,**

                          **Plaintiff,**                 **1:08-cv-1322**
                                                      **(GLS/DRH)**

           **v.**

**HARRY BUFFARDI,** Individually and in his Official
Capacity as Sheriff of the County of Schenectady;
**GORDON POLLARD,** Individually and in his
Official Capacity as Undersheriff of the County of
Schenectady; **TIMOTHY S. BRADT,** Individually
and as an Employee of the County of Schenectady;
**JOHN DOES,** Being Unnamed Employees of the
County of Schenectady; **COUNTY OF
SCHENECTADY; RONALD WALSH,** Individually
and in his Official Capacity as the President of the
Schenectady County Sheriff's Benevolent
Association, Local 3874/#82; **SCHENECTADY
COUNTY SHERIFF'S BENEVOLENT
ASSOCIATION, LOCAL 3874/#82; KATHLEEN
ROONEY,** Individually and in her Official Capacity
as Chief Executive Officer for the County of
Schenectady; and **SCHENECTADY COUNTY
SHERIFF'S DEPARTMENT,**

                              **Defendants.**
_____

**APPEARANCES:**                 **OF COUNSEL:**

**FOR THE PLAINTIFF:**
ROGER L. HARRIS
Pro Se
P.O. Box 4735
Schenectady, NY 12304

**FOR THE DEFENDANTS:**

*County Defendants*
Goldberg, Segalla Law Firm                    LATHA RAGHAVAN, ESQ.
8 Southwoods Boulevard, Suite 300      JONATHAN M. BERNSTEIN,
Albany, NY 12211-2526                           ESQ.

*Union Defendants*
New York State Law Enforcement          MATTHEW P. RYAN, ESQ.
Officers Union
63 Colvin Avenue
Albany, NY 12206

**Gary L. Sharpe**
**District Court Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Roger Harris commenced this action under 42 U.S.C. §§ 1981, 1983, and 1985 against defendants Harry Buffardi, Gordon Pollard, Timothy Bradt, John Does, County of Schenectady, Kathleen Rooney, Ronald Walsh, and Schenectady County Sheriff's Department (County defendants), and Schenectady County Sheriff's Benevolent Association, Local 3874/#82 and Walsh in his capacity as Union President (Union defendants), alleging violations of his rights under the Fourteenth Amendment of the United States Constitution, Title VII of the Civil Rights

Act of 1964,[1] the ADEA,[2] New York State Human Rights Law (NYSHRL),[3] and New York State common law, including deprivation of property without due process, procedural due process and equal protection violations, race and age discrimination, bad faith inadequate investigation, fabrication of evidence, obstruction of justice, wrongful discharge and termination, intentional infliction of emotional distress (IIED), breach of duty of fair representation, interference with the right to make and enforce a contract, and conspiracy.  (*See* 2d Am. Compl., Dkt. No. 33.)  Pending are County defendants' motion for summary judgment, (Dkt. No. .55); Union defendants' motion for summary judgment, (Dkt. No. 57); Harris's cross-motion for summary judgment, (Dkt. No. 70); and Harris's untimely motion for declaratory and injunctive relief, (Dkt. No. 71).[4]  For the reasons that follow, defendants' motions are granted, Harris's motions are denied, and the complaint is dismissed.

---

[1]42 U.S.C. § 2000e, *et seq.*

[2]Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*

[3]N.Y. EXEC. LAW § 296.

[4]Additionally pending is Harris's February 11, 2011 letter motion requesting that the court take judicial notice of Sandy Naparty's January 12, 2011 arrest.  (Dkt. No. 87.)  Although unable to discern how Ms. Naparty's arrest is at all relevant to this matter, the court will nonetheless grant Harris's request.

## II. **Background**

On May 20, 2007, plaintiff Roger Harris, a 62-year-old African-American male, was hired by the Schenectady County Sheriff's Department as a correction officer at the Schenectady County Jail.  (*See* County Defs. SMF ¶ 3, Dkt. No. 55:2.)  As a newly hired correction officer, Harris was considered probationary for his first year of employment.  (*See id.* at ¶ 5.)  During this probationary period, correction officers are expected to abide by the Sheriff's Department's Code of Conduct, which requires employees "to conduct themselves in a manner which brings credit to the department," "to represent themselves in the highest standards and traditions," "to conduct themselves in a professional manner at all times," not to "engag[e] in any criminal, infamous, dishonest, notorious or disgraceful conduct," and not to "use physical force or deadly physical force on any person except as defined by law."  (Bernstein Aff., Ex. H, Code of Conduct, Dkt. No. 55:17.)

On September 28, 2007, Harris was involved in an off-duty altercation outside of McArthur's Pub in Schenectady, New York.  (*See* County Defs. SMF ¶ 13, Dkt. No. 55:2.)  As a result of his involvement in this altercation, members of the Schenectady City Police Department

4

arrested Harris and charged him with assault in the third degree, N.Y.

PENAL LAW § 120.00.  (*See* Union Defs. SMF ¶¶ 14-15, Dkt. No. 57:1.)

After being arrested, charged, and released, Harris's employment with the

County was immediately terminated, (*see id.* at ¶ 16; County Defs. SMF ¶

10, Dkt. No. 55:2), which was memorialized in a letter issued to Harris on

September 28, 2007, by Undersheriff Gordon Pollard, (*see* Bradt Aff., Ex.

J(a), Dkt. No. 55:25).  Sheriff's Department Chief Timothy Bradt conducted

an investigation into the alleged assault, during which he reviewed a video

of the incident that had been recorded by MacArthur's Pub's surveillance

camera.  (*See* County Defs. SMF ¶¶ 12-13, Dkt. No. 55:2.)  The video

recording showed Harris assaulting an individual, Byron Lake, outside of

McArthur's Pub.  (*See* County Defs. June 23, 2010 Letter Exs., Dkt. No. 52;

County Defs. SMF ¶ 13, Dkt. No. 55:2.)  Ultimately, on March 15, 2010,

after a jury trial in Schenectady City Court, Harris was found guilty of third-

degree assault.  (*See* County Defs. SMF ¶ 21, Dkt. No. 55:2; Bernstein Aff.,

Ex. K, Trial Tr. at 443-44, Dkt. No. 55:29.)

On September 29, 2007, Harris contacted Ronald Walsh, President

of the Schenectady County Sheriff's Benevolent Association, Local 3874,

Council 82.  (*See* Union Defs. SMF ¶ 17, Dkt. No. 57:1.)  In response to

Harris's questions regarding his termination, Walsh avers that he explained to Harris that, as a probationary employee, he "could be dismissed for any legitimate purpose including being arrested," that he was "not entitled to a hearing under the collective bargaining agreement challenging [his] termination," and that the Union "would not be filing a grievance on [his] behalf given the [Sheriff's Department's] broad power to terminate a probationary employee." (Walsh Aff. ¶¶ 4-6, Dkt. No. 57:7.) Walsh, however, did advise Harris that the Union—though not obligated to—would assist in paying the costs associated with Harris's criminal matter by paying for the assistance of criminal attorney Steven Kouray. (*See id.* at ¶¶ 8-9.)

In October 2007, Harris met with Walsh and attorney Ennio Corsi, General Counsel to Council 82, to review and discuss Harris's termination and evaluate whether any action could be taken to challenge it. (*See id.* at ¶ 12.) During this meeting, Harris was again advised that the Sheriff's Department could terminate his probationary employment simply based on his arrest. (*See id.*) Harris was further advised to seek a second opinion and that he had the right to contact or file a grievance with the New York State Division of Human Rights (DHR) and the Equal Employment Opportunity Commission (EEOC). (*See id.* at ¶ 14; Union Defs. SMF ¶ 23,

Dkt. No. 57:1; Corsi Aff. ¶ 16, Dkt. No. 70:5.)

Shortly thereafter, on October 31, 2007, Harris filed a notice with the Sheriff's Department requesting a "name clearing hearing" on the grounds that his termination violated his Fourteenth Amendment rights because it was based on "false and manufactured information ... [that] the parties knew or should have known was false[ly] manufactured (video evidence) and bias [sic]."  (*See* Ryan Aff., Ex. E, Dkt. No. 57:6.)

On March 5, 2008, Harris filed a verified complaint with the DHR, charging the Sheriff's Office with race- and age-based discrimination.  (*See* Bernstein Aff., Ex. G, Dkt. No. 55:10.)  After conducting an investigation, the DHR determined that no probable cause existed for Harris's claims, dismissed his complaint, and notified Harris that he may file an appeal with the New York State Supreme Court, which must be filed "within sixty (60) days," and that he may request a review of his complaint by the EEOC. (*See id.*)  On November 13, 2008, the EEOC issued a decision adopting the DHR's findings and notifying Harris of his right to file a civil action under Title VII in state or federal court.  (*See* 2d Am. Compl., Ex. 1, Dkt. No. 33.)

Harris commenced this action on December 19, 2008, and thereafter amended his complaint, alleging a series of claims arising under the

7

Fourteenth Amendment, Title VII, the ADEA, NYSHRL, and state common law.  (*See* 2d Am. Compl., Dkt. No. 33.)  Following discovery, County and Union defendants moved for summary judgment on Harris's claims.  (*See* Dkt. Nos. 55, 57.)  In response, Harris cross-moved for summary judgment, (*see* Dkt. No. 70), and moved for declaratory and injunctive relief, seeking to preclude the introduction of the DVD-R video recordings of the September 28, 2007 incident, (*see* Dkt. No. 71).

### III.  Standard of Review

The standard for the grant of summary judgment is well established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its previous opinion in *Bain v. Town of Argyle*, 499 F. Supp. 2d 192, 194-95 (N.D.N.Y. 2007).

### IV.  Discussion

### A.    Declaratory and Injunctive Relief

As an initial matter, Harris, by letter dated September 16, 2010, requests the court to declare inadmissible the two DVD-Rs submitted by County defendants.  (*See* Harris Sept. 16, 2010 Letter Mot., Dkt. No. 71;

*see also* County Defs. June 23, 2010 Letter & Exs.,[5] Dkt. No. 52.)  Harris

further seeks to enjoin defendants from using or distributing, among other

things, the DVD-Rs and the County Sheriff's Investigation Report.  (*See*

Harris Sept. 16, 2010 Letter Mot., Dkt. No. 71; *see also* Bradt Aff., Ex. A,

55:25.)  Essentially, Harris contends that the DVD-Rs have been

fabricated, altered, and contain dropped video frames, and that the

Investigation Report is derivatively inadmissible as it was prepared in

reliance on the contents of the DVD-Rs.  (*See id.*)

Having viewed the DVD-Rs, reviewed the Report, and considered the

parties' arguments, the court denies Harris's motion for declaratory and

injunctive relief.  As defendants highlight, the testimony elicited during

Harris's criminal trial abundantly supports the accuracy and consequent

admissibility of both the DVD-Rs and the Report.  (*See generally* Union

Defs. Resp. Mem. of Law, Dkt. No. 73:1; *see also* County Defs. Reply

Mem. of Law at 6, Dkt. No. 76:6; Bernstein Nov. 30, 2010 Letter, Dkt. No.

85.)  As to the DVD-Rs, and pursuant to FED. R. EVID. 901, the footage was

identified by the eyewitnesses to the event in question—namely, Sandra

---

[5]As explained by defense counsel Jonathan Bernstein, the first DVD-R, which is marked "07-087 Harris," was obtained from Schenectady County; and the second DVD-R, which is marked "10124000 COA P.L. Exhibit 19," was obtained from the NYSDHR's files. (*See* Bernstein June 23, 2010 Letter, Dkt. No. 52.)

Naparty, (*see* Bernstein Aff., Ex. K, Trial Tr. at 167, Dkt. No. 55:28), and

Byron Lake, (*see id.* at 271-77)—and authenticated by testimonial evidence

regarding the camera's installation, activation, and operation, and the

recording's chain of possession—specifically, the testimony of Michael

Bump, (*see id.* at 115-32, Dkt. No. 55:27), Doug Hitchcock, (*see id.* at 150-

51), Officer William Fennell, (*see id.* at 228, Dkt. No. 55:28), Sergeant

Edward Barbagelata, (*see id.* at 239-40), and Assistant District Attorney

John Healy, (*see* Healy Aff., Dkt. No. 55:33).  As to the Report, and

pursuant to FED. R. EVID. 803(6), Chief Bradt has affirmed that it was

prepared and kept in the normal course of the Sheriff's Department's

business.[6]  (*See* Bradt Aff. ¶ 2, Dkt. No. 55:24.)  Moreover, under FED. R.

EVID. 803(8) and as discussed by the Second Circuit in *Gentile v. Cnty. of*

*Suffolk*, 926 F.2d 142, 148 (2d Cir. 1991), the Report is admissible as a

product made in accordance with N.Y. COUNTY LAW §§ 650 and 652.  (*See*

Union Defs. Mem. of Law at 1, 8-9, Dkt. No. 73:1.)   Therefore, since there

is no viable question regarding the actual relevance of the content of the

───────────────

[6]Even if the report was not excepted under FED. R. EVID. 803, the court concurs with
Union defendants' assertion that they offer the report not for the truth of the matter asserted
but rather to show that Walsh and Local 3874 played no role in Harris's termination and that
Harris's termination occurred for legitimate reasons.  (*See* Union Defs. Mem. of Law at 8-9,
Dkt. No. 73:1.)

DVD-Rs and the Report, the court denies Harris's motion to preclude defendants' submission and the court's consideration of the DVD-Rs and the Report.

## B.   <u>Failure to Serve and File a Notice of Claim</u>

"Notice of claim requirements are construed strictly by New York state courts.  Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action."  *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793-94 (2d Cir. 1999) (internal quotation marks and citations omitted); *see also Olsen v. Cnty. of Nassau*, No. CV 05-3623, 2008 WL 4838705, at *3-4 (E.D.N.Y. Nov. 4, 2008).

County defendants assert that this court lacks subject matter jurisdiction over Harris's state law claims as a result of Harris's failure to serve a notice of claim on the County in accordance with N.Y. COUNTY LAW § 52.  (*See* County Defs. Mem. of Law at 18-19, Dkt. No. 55:1; *see also* Gardner Aff. ¶ 4, Dkt. No. 55:32 ("A search of the County's records reveals that a Notice of Claim was never served and filed by ... Harris with regard to any of the claims asserted in this action.").)  In response, Harris has submitted a copy of his purported notice of claim dated December 20, 2007, and a series of certified mail receipts, (*see* Harris Ex. 19, Dkt. No.

11

70:4), to establish that he served a notice of claim upon the County, (*see* Pl. Resp. Mem. of Law ¶ 20, Dkt. No. 70).  While the court has significant reservations regarding the individual County defendants' amenability to suit for failure to serve each of them with a notice of claim, (*see* County Defs. Mem. of Law at 18-19, Dkt. No. 55:1), the court nonetheless declines to dismiss Harris's claims on this basis in light of both his pro se status and the documents submitted by him which on their face suggest that he did file a notice of claim with the County.

## C.   Title VII, the ADEA, and NYSHRL

Under Title VII, it is "an unlawful employment practice for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

In analyzing claims of race discrimination, courts apply the burden-shifting rules first set forth in *McDonnell Douglas Corp. v. Green*, which place upon the plaintiff the initial burden of making out a prima facie case of discrimination.  411 U.S. 792 (1973).  A plaintiff must satisfy this burden by showing: "(1) membership in a protected class; (2) satisfactory job

performance; (3) termination from employment or other adverse employment action; and (4) the ultimate filling of the position with an individual who is not a member of the protected class." *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001).  The fourth prong may be satisfied by demonstrating that "the discharge or adverse employment action occurred under circumstances giving rise to an inference of discrimination" based on the plaintiff's membership in a protected class.  *Id.*  The Second Circuit characterizes the plaintiff's prima facie burden as "minimal."  *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005) (citations omitted).

"A plaintiff's establishment of a prima facie case gives rise to a presumption of unlawful discrimination that shifts the burden of production to the defendant, who must proffer a 'legitimate, nondiscriminatory reason' for the challenged employment action."  *Id.* at 76 (internal citations omitted).  If the defendant proffers a legitimate, nondiscriminatory reason for the challenged employment action, the presumption of discrimination drops out of the analysis, and the defendant "will be entitled to summary judgment ... unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination."  *James v. N.Y. Racing*

13

*Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000).

Ultimately, once the burden shifts back to the plaintiff, the plaintiff must show, without the benefit of the presumption, "that the employer's determination was in fact the result of racial discrimination." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008). The plaintiff must demonstrate by a preponderance of the evidence that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). This showing may be made "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.*; *see also Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1180-81 (2d Cir. 1992). Thus, to avoid summary judgment, "the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." *Holcomb*, 521 F.3d at 138 (internal quotation marks and citation omitted).

"The ADEA makes it unlawful for employers to discriminate on the

14

basis of age against employees age 40 or older." *Dist. Council 37 v. N.Y. City Dep't of Parks & Recreation*, 113 F.3d 347, 351 (2d Cir. 1997) (citations omitted).  Employers are prohibited from refusing to hire, discharging, or otherwise discriminating against an employee with regard to compensation, terms, conditions, or privileges of employment because of age.  *See* 29 U.S.C. § 623(a).

ADEA cases operate under the same *McDonnell Douglas* burden-shifting framework.  *See Holtz*, 258 F.3d at 76; *see also Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 105-06 (2d Cir. 2010).  Accordingly, the plaintiff bears the initial burden of establishing a prima facie case of age discrimination by showing that "(1) [he] was within the protected class; (2) [he] was qualified for the position; (3) [he] was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009) (citations omitted).  In turn, the defendant must come forward with evidence of a legitimate, nondiscriminatory reason for the challenged actions.  *Id.* at 498-99.  If the defendant articulates such a reason, "the burden shifts back to the plaintiff to demonstrate by competent evidence that the legitimate reasons offered

15

by the defendant were not its true reasons, but were a pretext for

discrimination." *Id.* at 499 (internal quotation marks and citation omitted).

In carrying this burden, the plaintiff "must prove by a preponderance of the

evidence (which may be direct or circumstantial), that age was the 'but-for'

cause of the challenged employer decision." *Gross v. FBL Fin. Servs.,*

*Inc.*, 129 S.Ct. 2343, 2351 (2009) (citation omitted).

"[C]laims brought under [NYSHRL] are analytically identical to claims

brought under Title VII. *Torres v. Pisano*, 116 F.3d 625, 629 n.1 (2d Cir.

1997) (citation omitted); *see also Weinstock v. Columbia Univ.*, 224 F.3d

33, 42 n.1 (2d Cir. 2000) ("The identical standards apply to employment

discrimination claims brought under Title VII ... [and] New York Executive

Law § 296 ...." (citations omitted)).  Likewise, NYSHRL claims are analyzed

under the same standard as claims brought under the ADEA.  *See id.* at

1304 n.4; *see also Abrahamson v. Bd. of Educ. of Wappingers Falls Cent.*

*Sch. Dist.*, 374 F.3d 66, 70 n.2 (2d Cir. 2004) ("Since the [NYSHRL] statute

mirrors the requirements of the ADEA, violation of one necessarily implies

violation of the other." (citations omitted)).  However, unlike Title VII and the

ADEA, it is also unlawful "for any person to aid, abet, incite, compel or

coerce the doing of any of the acts forbidden under [NYSHRL]."  N.Y.

16

EXEC. LAW § 296(6); *see also Feingold v. New York*, 366 F.3d 138, 158 n.19 (2d Cir. 2004).  Thus, an individual defendant "who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under [NYSHRL]."  *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds*, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

     Here, the court is not convinced that Harris can even make out a prima facie case of race- or age-based discrimination.  Other than offering conjectural and unsubstantiated assertions that the County had a "racially discriminatory employment policy" and that certain individuals were "known" to be racists, had a history of fabricating evidence against African-American correction officers, or "display[ed] acts of racial prejudice," (*see* Pl. SMF ¶¶ 11, 13, 16, 22, 94-96, Dkt. No. 69:1), Harris has not provided any actual evidence, direct or circumstantial, showing that his discharge occurred under circumstances that could give rise to an inference of racial discrimination.  And having scoured Harris's submissions, (*see generally* Pl. Exs. 1-74, Dkt. No. 70:1-20), the court finds no allegation, let alone evidence, setting forth how Harris's age played a role in his discharge. Consequently, Harris's claims for unlawful termination based on his race

and age are prima facie insufficient.  Moreover, even if Harris could

establish a prima facie case of race or age discrimination, there is nothing

in the record to rebut or undermine the legitimate reason offered for his

termination, namely his arrest for assault, the charges filed against him,

and, ultimately, his conviction.  Therefore, the court grants defendants'

motions for summary judgment on Harris's Title VII, ADEA, and NYSHRL

claims, and those claims are dismissed.

## D.   **Wrongful Discharge and IIED**

"[A] common-law cause of action in tort for abusive or wrongful

discharge based upon the termination of an at-will employment ... may not

be maintained under New York law."  *McEntee v. Van Cleef & Arpels, Inc.*,

166 A.D.2d 359, 359-60 (1st Dep't 1990); *see also Murphy v. Am. Home

Prods. Corp.*, 58 N.Y.2d 293, 301-03 (N.Y. 1983) (refusing to recognize a

common-law cause of action for wrongful discharge of an at-will employee

since "[t]o do so would alter [the] long-settled rule that where an

employment is for an indefinite term it is presumed to be a hiring at will

which may be freely terminated by either party at any time for any reason

or even for no reason" (citation omitted)), *modified by statute*, N.Y. LABOR

LAW § 740 (1984).  Furthermore, since there is "no cause of action in tort in

New York for abusive or wrongful discharge of an at-will employee, [a] plaintiff should not be allowed to evade that conclusion or to subvert the traditional at-will contract rule by casting his cause of action in terms of a tort of [IIED]." *Murphy*, 58 N.Y.2d at 303 (citation omitted). In other words, absent the "rare instances" involving "significant battery, or improper physical contact," a claim for IIED will not lie in the employment context. *Curto v. Med. World Commc'ns, Inc.*, 388 F. Supp. 2d 101, 112 (E.D.N.Y. 2005) (internal quotation marks and citations omitted).

Here, because there is no dispute that Harris, as a probationary correction officer, was an at-will employee, and in light of his allegations and the evidence on record, his claims for wrongful discharge and IIED are subject to dismissal as a matter of law.[7]

---

[7]As County defendants highlight, (*see* County Defs. Mem. of Law at 12-13, Dkt. No. 55:1), Harris's IIED claim would likely be subject to dismissal in the alternative under the one-year statute of limitations. *See* N.Y. C.P.L.R. § 215(3); *Patterson v. Balsamico*, 440 F.3d 104, 112 n.4 (2d Cir. 2006); *Jemison v. Crichlow*, 139 A.D.2d 332, 336 (2d Dep't 1988).

The court also notes, and generally concurs with, defendants' contention that the DHR's findings and determination operate under the doctrines of res judicata and collateral estoppel to bar Harris from presenting here his wrongful discharge and IIED claims, NYSHRL claims, and several of his §§ 1981, 1983, and 1985 claims. (*See* County Defs. Mem. of Law at 2-6, Dkt. No. 55:1 (relying on, inter alia, *DeCintio v. Westchester Cnty. Med. Ctr.*, 821 F.2d 111, 118 & n.13 (2d Cir. 1987); *Joseph v. HDMJ Rest., Inc.*, 685 F. Supp. 2d 312, 317 (E.D.N.Y. 2009); *Reubens v. N.Y.C. Dep't of Juvenile Justice*, 930 F. Supp. 887, 889-90 (S.D.N.Y. 1996); *Bolecek v. Bd. of Educ. of City of N.Y.*, 289 A.D.2d 328, 328-29 (2d Dep't 2001)); Union Defs. Mem. of Law at 14-15, Dkt. No. 57:9.) Nonetheless, in consideration of Harris's pro se status and the somewhat confused, overlapping nature of his claims, the court has chosen to address his remaining constitutional challenges on their merits below—to the extent that is legally and factually possible.

## E.    Breach of Duty of Fair Representation

A union, as the exclusive bargaining representative of all employees in the bargaining unit, is statutorily obligated "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967) (citation omitted). "A union breaches its duty of fair representation if its actions can fairly be characterized as so far outside a wide range of reasonableness that they are wholly arbitrary, discriminatory, or in bad faith." *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998) (internal quotation marks and citations omitted).  This duty, which "extends to both the negotiation of a collective bargaining agreement, and its enforcement and administration," *id.* at 126 (citations omitted), stands "as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law," *Vaca*, 386 U.S. at 182.  Nonetheless, while a court's supervision of union action is vital, its review of such action "must be highly deferential, recognizing the wide latitude that [unions] need for the effective performance of their bargaining responsibilities."  *Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991)

(citation omitted).

To establish a claim for breach of the duty of fair representation, a plaintiff must satisfy two elements. First, the plaintiff must demonstrate that the "union's conduct toward [him as] a member of the collective bargaining unit [was] arbitrary, discriminatory, or in bad faith." *Vaca*, 386 U.S. at 190 (citation omitted). Second, the plaintiff must demonstrate "a causal connection between the union's wrongful conduct and [the plaintiff's] injuries." *White v. White Rose Food*, 237 F.3d 174, 179 (2d Cir. 2001) (internal quotation marks and citation omitted). Arbitrary conduct includes both intentional conduct and "acts of omission which, while not calculated to harm union members, may be so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary." *NLRB v. Local 282, Int'l Bhd. of Teamsters*, 740 F.2d 141, 147 (2d Cir. 1984) (internal quotation marks and citations omitted). For instance, "a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion." *Vaca*, 386 U.S. at 191; *see also Caputo v. Nat'l Ass'n of Letter Carriers*, 730 F. Supp. 1221, 1229 (E.D.N.Y. 1990) ("[T]he failure to act does make out a claim ... because it is not the result of an error of judgment, given that it was not the result of a

21

deliberative process, but rather an omission which is properly characterized as arbitrary."); *see, e.g.*, *Moore v. Roadway Express, Inc.*, No. 07-CV-977, 2008 WL 819049, at *4-5 (E.D.N.Y. Mar. 25, 2008) (denying motion to dismiss where plaintiff alleged that the union failed to respond to and conduct any investigation into his complaints).  Thus, a union has a "duty to perform some minimal investigation ... [and] must exercise special care in handling a grievance which concerns a discharge." *Evangelista v. Inlandboatmen's Union of Pac.*, 777 F.2d 1390, 1395 (9th Cir. 1985) (citations omitted).  However, "[t]actical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach." *Barr v. United Parcel Servs., Inc.*, 868 F.2d 36, 43 (2d Cir. 1989).  In other words, "courts cannot intercede on behalf of employees who may be prejudiced by rationally founded decisions which operate to their particular disadvantage." *Id.* at 44 (internal quotation marks and citations omitted).

Harris's claim against Union defendants for breach of fair duty of representation cannot survive in light of the unrefuted testimony provided by both Walsh and Mr. Corsi establishing that they met multiple times with Harris, evaluated the merits of his claim, provided more than adequate

22

advice and guidance, and offered to and actually assisted in paying the costs associated with Harris's criminal matter.  Furthermore, both Walsh and Mr. Corsi aver that at no point in their conversations with Harris did he mention the possibility that race played a role in his termination.  (*See* Walsh Aff. ¶ 13, Dkt. No. 55:31; Corsi Aff. ¶ 10, Dkt. No. 70:5.)  These averments are corroborated by the contents of Harris's October 31, 2007 notice to request a "name clearing hearing," which alleges due process violations, fabrication of evidence, and slander, but does not contain any reference to race or discrimination.  (*See* Ryan Aff., Ex. E, Dkt. No. 57:6.)  And most importantly, the evidence—particularly when viewed in the light of the Code of Conduct, (*see* Bernstein Aff., Ex. H, Code of Conduct, Dkt. No. 55:17), and the Collective Bargaining Agreement, (*see* Walsh Aff., Ex. A, Dkt. No. 57:7)—overwhelmingly demonstrates that Harris's grievance had no merit.  Therefore, the court grants Union defendants' motion for summary judgment on Harris's breach of duty of fair representation claim.

**F.    Section 1981**

Section 1981 protects each individual's right "to make and enforce contracts ... including the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges,

terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(a)-(b).  "To establish a § 1981 claim, a plaintiff ... must show: (1) that [he] is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) that the discrimination concerned one or more of the activities enumerated in § 1981."  *Lauture v. Int'l Bus. Machs. Corp.*, 216 F.3d 258, 261 (2d Cir. 2000) (citation omitted).  Claims under § 1981 operate under the same *McDonnell Douglas* burden-shifting framework as Title VII and ADEA claims do.  *See Martin v. Citibank, N.A.*, 762 F.2d 212, 216-17 (2d Cir. 1985).  This is because "[m]ost of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981."  *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).  Accordingly, "the factors justifying summary judgment dismissing [a plaintiff's] Title VII claim ... for termination of his employment equally support the summary dismissal of his claims for termination brought under 42 U.S.C. §§ 1981 and 1983."  *Id.*

As to Harris's claims under § 1981 against County defendants, these claims are dismissed for the same reasons that warrant dismissal of his Title VII, ADEA, and NYSHRL claims.  Likewise, for these reasons and

those warranting dismissal of his breach of duty of fair representation claim, Harris's § 1981 claim against Union defendants—to the extent he is asserting one—is dismissed.  *See Harmon v. Matarazzo*, 162 F.3d 1147, 1998 WL 639400, at *2 (2d Cir. Mar. 27, 1998).

## G.   <u>Section 1983</u>

## 1.   **Deprivation of Property**

Harris's first claim brought pursuant to § 1983—aside from the wrongful discharge claims, (*see* 2d Am. Compl. ¶¶ 351-62, 383-87, Dkt. No. 33), which have already been found subject to dismissal—appears to be that his termination constituted a deprivation of his property without due process, (*see id.* at ¶¶ 333-337).  This claim fails on two fronts.  First, Harris had no constitutionally protected property interest in his probationary position.  *See Baron v. Port Auth. of N.Y. & N.J.*, 271 F.3d 81, 89 (2d Cir. 2001) ("[A]t-will employment is not a constitutionally protected property interest."); *see, e.g.*, *Anderson v. State of N.Y., Office of Court Admin. of Unified Ct. Sys.*, 614 F. Supp. 2d 404, 426 (S.D.N.Y. 2009).  And second, even if Harris did have a property right in his employment, he failed without excuse to pursue an Article 78 proceeding to challenge his termination. *See Gudema v. Nassau Cnty.*, 163 F.3d 717, 724 (2d Cir. 1998) ("A

25

deprivation of ... property through the conduct of a state [entity] whose acts are random and unauthorized ... does not constitute a procedural due process violation so long as the state provides a meaningful remedy thereafter." (citations omitted)); *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996) (same); *see also Vargas v. City of New York*, 377 F.3d 200, 208 (2d Cir. 2004) ("[A]n Article 78 proceeding ... provides a meaningful remedy where violations of due process by a local governmental entity are alleged." (citing *Gudema*, 163 F.3d at 724-25)); *see, e.g.*, *Longo v. Suffolk Cnty. Police Dep't*, 429 F. Supp. 2d 553, 559-60 (E.D.N.Y. 2006). Consequently, Harris's property deprivation claim is dismissed.

## 2. Equal Protection

Second, Harris asserts—though not clearly—that his equal protection rights were violated by defendants. (*See* 2d Am. Compl. ¶¶ 2, 5, 384, Dkt. No. 33.) "To prove a violation of the Equal Protection Clause ... a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination ... [and] that the disparity in treatment cannot survive the appropriate level of scrutiny ...." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (citations omitted).

As the court has already discussed, Harris has not proffered any direct evidence demonstrating or circumstantial evidence from which to infer that any of the defendants acted with a racial or otherwise impermissible animus.  Equally important, Harris has failed to identify any similarly situated person or persons compared to whom he was selectively treated—which is not surprising in light of the uniqueness of his criminal conduct.  As a result, Harris's equal protection claim cannot survive summary judgment.

### 3.   Collateral Estoppel

The third set of § 1983 claims appears to implicate Harris's underlying criminal conviction.  Specifically, these claims are based on alleged violations of his due process rights, fabrication of evidence, obstruction of justice, and bad faith inadequate investigation.  (*See* 2d Am. Compl. ¶¶ 363-79, 388-91, Dkt. No. 33.)  These claims also fail as they are barred by collateral estoppel.

In New York, the doctrine of collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party, whether or not the tribunals or causes of action are the same." *Parker v.*

*Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 349 (N.Y. 1999) (internal

quotation marks and citations omitted).  The doctrine applies when:

> (1) the issues in both proceedings are identical, (2) the issue in
> the prior proceeding was actually litigated and actually decided,
> (3) there was full and fair opportunity to litigate in the prior
> proceeding, and (4) the issue previously litigated was
> necessary to support a valid and final judgment on the merits.

*Liona Corp. v. PCH Assocs.* (*In re PCH Assocs.*), 949 F.2d 585, 593 (2d

Cir. 1991) (citations omitted).  In accordance with these principles, an

action for damages pursuant to § 1983 "for allegedly unconstitutional

conviction or imprisonment, or for other harm caused by actions whose

unlawfulness would render a conviction or sentence invalid" can only be

maintained if the plaintiff's "conviction or sentence has been reversed on

direct appeal, expunged by executive order, declared invalid by a state

tribunal authorized to make such determination, or called into question by a

federal court's issuance of a writ of habeas corpus."  *Heck v. Humphrey*,

512 U.S. 477, 486-87 (1994).

It is undisputed that Harris was convicted for third-degree assault and

that conviction has not been overturned, expunged, or otherwise

invalidated.  Accordingly, Harris's claims for violation of his due process

rights, fabrication of evidence, obstruction of justice, bad faith inadequate

investigation, and §§ 1983 and 1985 conspiracy—all of which are patent

attacks on the validity of his conviction—are barred.  *See, e.g.*, *Channer v.*

*Mitchell*, 43 F.3d 786, 787 (2d Cir. 1994) (per curiam) (affirming dismissal

of claims against police officers for perjury and coercion of witnesses as

precluded by plaintiff's valid conviction); *Amaker v. Weiner*, 179 F.3d 48, 52

(2d Cir. 1999) (holding that *Heck* also applies to claims challenging a

plaintiff's conviction under §§ 1981, 1983, 1985, and 1986); *Jasper v.*

*Fourth Ct. App.*, No. 08 Civ. 7472, 2009 WL 1383529, at *1 (S.D.N.Y. May

18, 2009) (dismissing claim of violation of due process right to a fair trial as

precluded by plaintiff's valid conviction); *Perez v. Cuomo*, No. 09-CV-1109,

2009 WL 1046137, at *7 (E.D.N.Y. Apr. 17, 2009) (same); *Fernandez v.*

*Holzbach*, No. 3:04-CV-1664, 2007 WL 1467182, at *1 (May 15, 2007)

(dismissing claims against judge, prosecutor, detectives, witnesses, and

other state officials for perjury and fabrication of evidence as precluded by

plaintiff's valid conviction); *Duamutef v. Morris*, 956 F. Supp. 1112, 1116-18

(S.D.N.Y. 1997) (dismissing claims for false arrest, malicious prosecution,

perjury, First Amendment retaliation, and § 1985 conspiracy—all of which

formed the basis for plaintiff's overall claim that defendants conspired

against him to frame him for a crime—as precluded by plaintiff's valid

conviction).  Therefore, Harris's remaining § 1983 claims are clearly barred in light of the factual grounds upon which they rest.

**H.    Conspiracy**

In the absence of an underlying constitutional violation, Harris's charges of conspiracy under § 1983 or § 1985 cannot be maintained.  *See Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001); *Gray v. Town of Darien*, 927 F.2d 69, 73 (2d Cir. 1991).  Moreover, aside from a series of conclusory, general, and implausible allegations and suppositions that all of the defendants conspired to violate his rights, Harris has failed to offer any evidence demonstrating that any of the defendants entered into an agreement or reached an understanding to willfully deprive him of any rights protected by § 1983 or § 1985.  *See United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983) ("[T]o make out a violation of 42 U.S.C. § 1985(3) ... the plaintiff must [prove] four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."); *Malsh v. Austin*, 901 F. Supp.

30

757, 763 (S.D.N.Y. 1995) ("To sustain a conspiracy claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that a defendant acted in a wilful manner, culminating in an agreement, understanding or 'meeting of the minds,' that violated the plaintiff's rights ... secured by the Constitution or the federal courts." (internal quotation marks and citation omitted)); *see also Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) (per curiam).  Nor has Harris even alleged facts sufficient to enable the court to infer a conspiracy.  Therefore, Harris's claims of conspiracy are dismissed.

I.   ***Monell* Liability and Personal Involvement**

A municipality may be liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).  To establish a municipal policy or custom, a plaintiff must allege:

> (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to

31

> properly train or supervise their subordinates, amounting to
> "deliberate indifference" to the rights of those who come in
> contact with the municipal employees.

*Prowisor v. Bon-Ton, Inc.*, 426 F. Supp. 2d 165, 174 (S.D.N.Y. 2006)

(citation omitted).  However, a municipality and its supervisory officials may

not be held liable under § 1983 based on the theory of respondeat

superior.  *See Monell*, 436 U.S. 658, 691 (1978).  Moreover, "a single

incident alleged in a complaint, especially if it involved only actors below

the policy-making level, does not suffice to show a municipal policy."

*Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (citations

omitted); *see also City of Canton v. Harris*, 489 U.S. 378, 387 (1989).  Still,

a policy may be inferred from circumstantial proof that the municipality

displayed a deliberate indifference to the constitutional rights of an

individual by failing to train its employees or repeatedly failing to make any

meaningful investigation into complaints of constitutional violations after

receiving notice.  *See Ricciuti*, 941 F.2d at 123.

　　　Here, Harris appears to allege that the defendants should be subject

to liability under *Monell* for negligently hiring, training, and retaining their

employees and subordinates, for participating in some grandiose

conspiracy to violate his rights, and for allowing a practice or unwritten

policy to persist and thereby cause the violations alleged.  However, Harris

has failed to identify any policy or practice that any of the defendants

endorsed or allowed to persist that led to or caused the violations alleged.

Nor has Harris proffered any facts or evidence that would suggest that any

defendant failed to properly train and supervise subordinates, or was

otherwise indifferent to Harris's or any other individual's rights.  And as to

defendant Buffardi, Harris has failed to put forth any evidence

demonstrating his personal involvement in the violations alleged.

Consequently, while the court has already found dismissal of all claims

warranted, Harris's *Monell* claims against each defendant are subject to

dismissal.

## J.     <u>State Actor Status</u>

"In order to state a claim under [42 U.S.C.] § 1983, a plaintiff must

allege that he was injured by either a state actor or a private party acting

under color of state law."  *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307,

323 (2d Cir. 2002) (citation omitted).  However, "[a] merely conclusory

allegation that a private [individual] acted in concert with a state actor does

not suffice to state a § 1983 claim against the private [individual]."  *Id.*

(citation omitted).

As to the Union and Walsh in his capacity as Union President, Harris has offered nothing beyond conjectural, conclusory allegations that they conspired with the County defendants and thereby qualify as state actors. Accordingly, Union defendants' motion for summary judgment on Harris's § 1983 claims against them is granted on this alternative ground.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that County defendants' motion for summary judgment (Dkt. No. 55) is **GRANTED**; and it is further

**ORDERED** that Union defendants' motion for summary judgment (Dkt. No. 57) is **GRANTED**; and it is further

**ORDERED** that Harris's motion for summary judgment (Dkt. No. 70) is **DENIED**; and it is further

**ORDERED** that Harris's motion for declaratory and injunctive relief (Dkt. No. 71) is **DENIED**; and it is further

**ORDERED** that Harris's February 11, 2011 letter motion for the court to take judicial notice of Sandy Naparty's January 12, 2011 arrest (Dkt. No. 87) is **GRANTED**; and it is further

**ORDERED** that Harris's complaint is **DISMISSED**; and it is further

34

**ORDERED** that the Clerk close this case provide a copy of this

Memorandum-Decision and Order to the parties by regular and certified

mail.

**IT IS SO ORDERED.**

August 23, 2011
Albany, New York

Gary L. Sharpe
U.S. District Judge